STATE, MARSHALL ET AL., PROSECUTORS, v. CYRUS CADWALADER, STREET COMMISSIONER OF THE CITY OF TRENTON.

1. A tannery is not *per se* a nuisance, and cannot be abated by the street commissioner or board of health until they are adjudged to be so employed as to be inimical to public health or safety, or until their owners contravene some ordinance prescribing the mode in which·they shall be used, and thereby make them nuisances.

2. The functions of the board of health are of an executive and advisory, and not of a legislative or judicial character. A resolution passed by said board declaring plaintiff's tannery to be a nuisance, is void.

3. The proceedings to enforce the penalty are defective, in that the process does not state what ordinance the defendants had violated, and the time when, and the manner in which the same had been violated.

On *certiorari.*

The board of health of the city of Trenton on the 26th of August, 1872, passed the following resolution :

"*Resolved*, That the skin dressing establishment of Mr. J. Marshall & Son be declared a nuisance, in the opinion of the board, and that such steps be taken by the president as may be necessary to have it abated."

Whereupon the relators were notified and directed within five days to remove, correct and abate said nuisance, which consisted in vatting, dyeing and dressing of skins of animals on their premises within the city limits. Having failed to regard this notice, the prosecutors were proceeded against by the street commissioner, by warrant before Police Justice Street, and the penalty of $10 recovered against them by his judgment, for violating the eleventh section of the ordinance respecting the street commissioner, passed May 8th, 1866.

Argued at February Term, 1873, before Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiffs, *James Wilson.*

For the defendant, *James S. Aitkin.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The *certiorari* in this case brings up for review the resolution of the board of health, and the judgment and proceedings before Police Justice Street.

The tribunal established by law to determine the question of nuisance or no nuisance, is the legislative body of the city government.   It is their prerogative to adopt such sanitary measures as will preserve the public health, and to remove every nuisance which may endanger it, and their determination will be conclusive, so long as they do not violate the constitution or transcend the power conferred upon them.   I

is their clear right to restrain any occupation which proves detrimental to public health.

Police regulations controlling the use of private property, so that it will not become pernicious to the public at large, are not void, although they may, in a measure, affect private interests without providing compensation. The law presumes that the individual is compensated by sharing in the advantages accruing from the general enforcement of such beneficial measures.

The scope of control over this subject is defined by subdivision 24 of section 25, of the city charter, (*Acts*, 1866, *p.* 375,) in these words—

"The common council shall have power to make, modify, amend or repeal ordinances, rules and regulations, to abate or remove nuisances of every kind; and to require the owner or occupant of any grocery, cellar, tallow chandler's shop, butcher's stall, soap factory or tannery, or other offensive or unwholesome house or place, to cleanse, remove or abate the same."

They cannot abate every grocery, butcher's stall or tannery; such places are secure against interference or restraint, until they are adjudged to be so employed as to be inimical to public health or safety, or until their owners contravene some ordinance prescribing the mode in which they shall be used, and thereby make them nuisances. The business of the plaintiffs is not, *per se*, a nuisance, and it therefore requires action of a judicial nature to determine whether an occupation lawful in itself, is so conducted as to become liable to abatement.

The power to pass upon this question is lodged in the common council, and cannot be delegated to the street commissioner. The legislature has not entrusted him with unlimited authority to abate every butcher's stall, grocery, or tannery which, in his individual judgment, may be deemed a nuisance. Nor can a like power be exercised by the board of health, in the absence of any city ordinance defining what circumstances of abuse shall render these occupations obnoxious. The only

provision in the charter, with regard to the establishment of this body, is contained in section 25, subdivision 22, which empowers the common council to establish a board of health and define its powers and duties.

This clause contains no warrant to the common council to delegate to, or confer upon this board the powers and duties which they themselves are directed to exercise, otherwise there would be two legislative bodies within the city, with concurrent jurisdiction over this branch of its municipal affairs. This, certainly, was not contemplated by the law-maker, and if permitted, might result in conflict between them.

The functions of the board of health are of an executive and advisory, and not of a legislative or judicial character. While in this respect they discharge a most important duty, it might be wise to clothe them with more ample authority. The character of those who ordinarily constitute such bodies, fits them eminently to be guardians of the public health. The question in this case however, is one of power and not of public policy.

Where the injury complained of is a nuisance *per se*, and is denounced by a general ordinance, such as the deposit of garbage, filth, refuse, or other offensive matter deleterious to health, it may be removed by the street commissioner, and the offender subjected to the penalty in such case provided.

The board of health is vested with full power to enter upon all property for inspection, and to direct and control the street commissioner in the execution of his office.

In *Van Wormer* v. *Mayor of Albany*, 15 *Wend.* 263, a resolution of the board of health, declaring certain grounds to be a nuisance, was sustained, but it will be observed in that case, that they were vested by statute with very full power to suppress nuisances.

In the case certified here, there is no ordinance of the city defining what circumstances of abuse will bring an occupation or business like that of the relators, otherwise legitimate, into the range of nuisances.

In this case, the common council should have proceeded specially against the parties to be affected, and before their rights were impaired by an adverse adjudication, they were entitled to be heard in their defence. *State* v. *Jersey City*, 5 *Vroom* 39; *State, Bodine et al., pros.*, v. *Common Council of Trenton, ante p.* 198.

The resolution of the board of health, in general terms, denounces the skin dressing establishment of the prosecutors as a nuisance, and directs it to be abated. It does not bring the alleged offenders within the reach of any corporation ordinance, by enjoining them to remove any offensive matter noxious to public health, and, *per se*, a nuisance.

But if the prosecutors had violated a valid existing ordinance of the city, the mode in which the prosecution, to recover the penalty, has been pursued, is defective both in form and substance.

By the forty-fifth section of the charter, suit for the penalty may be instituted before a police justice, but before process issues, an affidavit must be filed, stating that the party proceeded against has violated an ordinance of the city, whereupon process, either in the nature of a warrant or summons issues, which must specify what ordinance the defendant has violated, and the time when and the manner in which the same has been violated. The statutory requisites have not been complied with.

In my opinion, therefore, the judgment and proceedings below should be set aside, with costs.

CITED in *Dawes* v. *Hightstown*, 16 *Vr.* 127.